**SO ORDERED: February 22, 2011.**



**Basil H. Lorch III**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| IN RE: ) | |
| WAGNER TRUCKING, INC., ) | CASE NO. 10-71404-BHL-7A |
|     Debtor. ) | |

**PRELIMINARY ORDER ON
MOTION OF EFS FOR RELIEF FROM STAY
AND NOTICE OF TELEPHONIC HEARING**

This matter comes before the Court on the Motion of the Creditor, Equilease Financial Services, Inc. ["EFS"], for an Order for Relief from the Automatic Stay which was filed on September 2, 2010 [Docket # 6]. The Debtor, Wagner Trucking, Inc., filed an Objection to the Motion and the Trustee filed a Joinder in the Debtor's Objection. The Court conducted a hearing on the foregoing matter on December 15, 2010, at which time the parties were granted leave to brief the issue. The matter was fully briefed on or about January 26, 2011.

Procedural Background

Wagner Trucking, Inc. ["Debtor"] was a corporation doing business in Owensville, Indiana when it filed for relief under Chapter 7 of the Bankruptcy Code on August 4, 2010. In Schedule D

of its Petition, the Debtor listed debt owed to EFS in the total amount of $24,609.38, with $15,000.00 of that amount secured by a purchase money security interest in a 2005 Peterbilt Model 379, and the remaining $9,609.38 unsecured. EFS, however, filed a secured Proof of Claim in the total amount of $56,412.52, with an arrearage of $26,512.62. EFS then filed the instant Motion for Relief from Stay on September 2, 2010, to which the Debtor and the Trustee have objected.

### Stipulated Facts

1. The Debtor and EFS entered into a Security Agreement dated September 22, 2006 and identified as No. 063794-001 [the "Security Agreement"]. Statement of Stipulated Facts, ¶ 8.

2. The terms of the Security Agreement were as follows: EFS agreed to make a secured loan to the Debtor in the principal amount of $98,133.60. The Debtor granted EFS a security interest in collateral identified as a 2005 Peterbilt Model 379, 345,000 miles, Hood Length 127, Engine ISX, HP 475, 70: Sleeper Size, Tall, 13 speed, 10 Alum, Wheels, Mileage 35, Serial No. 1XP5D49X95D845543 [the "Collateral"]. Statement of Stipulated Facts, ¶¶ 7, 9.

3. The terms of the Security Agreement provided that the Debtor would make payment to EFS in the amount of $1,635.56 per month for sixty months.[1] Statement of Stipulated Facts, ¶ 9, fn 1.

4. The Indiana Bureau of Motor Vehicles issued a Certificate of Title on June 16, 2007, which lists Wagner Trucking as the owner and Equilease Financial Services, Inc. as

---

[1] Those payment terms, however, were subsequently changed in an Amended Security Agreement dated October 15, 2008, whereby the Debtor agreed to make 42 payments of $1,638.99 beginning in November, 2008.

2

the First Lien Holder. The Title is numbered 07508112004 [the "Original Title"]. Statement of Stipulated Facts, ¶ 10.

5. The Collateral remained in the Debtor's possession at all relevant times herein. Statement of Stipulated Facts, ¶ 11.

6. EFS transferred certain assets and interests to EFS Credit Trust, its wholly-owned subsidiary, in or around December 2007, including the Security Agreement and the attendant interest in the Collateral. EFS "released" its lien as part of that transfer and subsequently caused a new State of Indiana Certificate of Title for a Vehicle evidencing EFS Credit Trust's lien to be issued. Movant's Reply, ¶ 6.

7. On February 11, 2008, the line labeled "Lien Released by" on the Original Title was signed by Karyn Vaspasiano, who identified herself as a manager. The Original Title was then mailed to the Debtor, who continued to hold it until the date of filing the Petition for Relief. Statement of Stipulated Facts, ¶ ¶ 12, 13.

8. On August 1, 2008, EFS Credit Trust wrote the Indiana Bureau of Motor Vehicles. Their letter stated that the Original Title had been lost and requested a duplicate title changing the lien holder's name from EFS to EFS Credit Trust. Statement of Stipulated Facts, ¶ 16.

9. EFS Credit Trust is a statutory trust and is wholly owned and controlled by EFS as a titling entity. Statement of Stipulated Facts, ¶ 3

10. EFS is engaged by EFS Credit Trust to perform account and loan servicing functions for Debtor's account with EFS Credit Trust. Statement of Stipulated Facts, ¶ 4.

11. The Bureau of Motor Vehicles issued a Title on September 11, 2008 ["the Second

3

Title"] which lists EFS Credit Trust as the first lien holder and Wagner Trucking, Inc. as the owner. Statement of Stipulated Facts, ¶ 17.

12. Prior to the filing of the Debtor's Petition for Relief, the Debtor did not make any request to alter or replace the Original Title from EFS, EFS Credit Trust, or the Indiana Bureau of Motor Vehicles. Statement of Stipulated Facts, ¶ 15.

13. The Debtor continued to make payments under the Security Agreement until July 29, 2009, when the last payment in the amount of $3,400.00 was received. *See,* Affidavit of Warren Chapman, Exh. 2 to Movant's Additional Brief in Support.

Discussion

The Debtor is correct that EFS released its lien on the Collateral by virtue of signing the release on the Certificate of Title on February 11, 2008. It wasn't until the Second Certificate of Title was issued on September 11, 2008, that EFS Credit Trust's lien appeared of record. If the bankruptcy case had been filed in the intervening seven months that no lien appeared of record, the Debtor's position would have merit because the trustee can step into the shoes of a hypothetical lien creditor as of the date of filing. But it wasn't until August 4, 2010, that the Debtor filed bankruptcy and, by that time, EFS Credit Trust's lien appeared of record and no hypothetical creditor could step in front of EFS based on notice.

The Debtor tries to get around that problem, however, by asserting that the lien is procedurally defective by the manner in which the second Certificate of Title was obtained. In its application for a duplicate title, EFS Credit Trust asserted that the original Certificate of Title had been lost and they requested a change in lien holder name from EFS to EFS Credit Trust. Because the first Certificate of Title was not actually "lost" and because only EFS was technically authorized

4

to request a change in lien holder name, and because the replacement title did not indicate that it was a "duplicate" title, the Debtor asserts that EFS Credit Trust's lien is ineffective.

The Debtor's arguments elevate form over substance. The Debtor was aware of the secured position of EFS and was bound by the terms of the Security Agreement that it had entered into with EFS. Under paragraph 12 of that Agreement, the Debtor authorized EFS to file "certificates of title and amendments thereto, applications, ... and other documents ... necessary with respect to the Collateral to evidence and perfect Secured Party's rights and interests therein..." The Debtor also, under paragraph 7(d), had an affirmative obligation to "obtain [a certificate of title] . . showing the security interest of the Secured Party thereon and . . . to do everything necessary or expedient to preserve or perfect the security interest of the Secured Party."

Furthermore, it is irrelevant, from the Debtor's perspective, whether EFS Credit Trust properly perfected its lien in the Collateral or not. As stated above, the Debtor is bound by the terms of the Security Agreement.. The purpose behind the titling requirements is to give notice to potential lien creditors of any existing liens. The Debtor knew when it received the Certificate of Title showing that the lien had been released that it was, in fact, still obligated under the terms of the Security Agreement. That's why the Debtor continued to make payments on the debt for almost eighteen months after receiving the original Certificate of Title and listed the debt as secured in its bankruptcy petition.

Finally, although both the Debtor and EFS hold certificates of title on the Collateral, the Court finds that EFS Credit Trust does hold a valid lien as reflected in the records of the Indiana Bureau of Motor Vehicles. In Indiana, a certificate of title is evidence of title, although not a conclusive determination of title. *See, National Bank & Trust Co. v. United States*, 589 F.2d 1298

(7th Cir. 1978); *Champa v. Consolidated Finance Corp.*, 110 N.E.2d 289, 294 (Ind. 1953); *Nichols v. Bogda Motors*, 77 N.E.2d 905, 907 (Ind.App. 1948).  In this case, all the evidence supports a finding that the EFS continues to hold a valid security interest in the pledged Collateral.

As to EFS's Motion for Relief from Stay, if there is no equity in the Collateral and no reorganization is process, there is no basis to deny relief.  Because the parties have not stipulated to those issues, the Court will conduct a telephonic conference to determine the status of those matters on March 10, 2011, at 2:20 p.m. (E.D.T.).  The Movant shall initiate the conference call at (812) 542-4570.

**IT IS SO ORDERED.**

# # #


Distribution:

Debtors
Creditor
Trustee
U.S. Trustee